CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 30, 2024
LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE  DIVISION

| | | |
|---|---|---|
| **ADIB EDDIE RAMEZ MAKDESSI,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23CV00050 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **COLLINS, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Adib Eddie Ramez Makdessi, Pro Se Plaintiff; Cassandra E. Sheehan and Richard C. Vorhis, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA CRIMINAL JUSTICE AND PUBLIC SAFETY DIVISION, Richmond, Virginia, for Defendants Collins, Massingill, Blevins, and White; Brittany E. Shipley and Rosalie P. Fessier, TIMERLAKESMITH, Staunton, Virginia, for Defendants Fox and Jessee, also known as Holbrook).*

This civil rights case under 42 U.S.C. § 1983 is before me on dispositive motions filed by the defendants and by the state prisoner plaintiff, Adib Eddie Ramez Makdessi.  Makdessi filed his claims as part of a multi-defendant Complaint.  The court severed his claims into four separate civil cases.  Order, Jan. 23, 2023, ECF No. 17, Case No. 7:22CV00428.  This action consists only of Claim 7 from that case.  Makdessi claims that while he was confined at Red Onion State Prison (Red Onion), one of the present defendants retaliated against him for filing a lawsuit by removing him from a handicapped accessible cell, other defendants failed to prevent or correct this cell change, and the defendant medical providers denied him adequate medical

care.  For the reasons that follow, I conclude that the defendants' motions must be

granted and Makdessi's motion must be denied.

## I.    BACKGROUND.

Claim 7 alleges the following events:

> On November 3, 2022, [defendant] Collins discovered that Makdessi
> had filed a lawsuit and removed him from his handicapped cell.
> Makdessi complained to defendants Lieutenant Massengill, Blevins,
> and Warden White, who said that defendants Dr. Fox and Nurse Jessee
> had ordered Makdessi's removal from the handicapped cell. On
> November 9, 2022, Makdessi fell, hit his head, and possibly fractured
> his left calf. Dr. Fox and Nurse Jessee refused to order X-rays and
> blamed Collins for removing Makdessi from his handicapped cell.

*Id*. at 3.[1]  The defendants are: Red Onion Warden Rick White; Assistant Warden

Blevins; Unit Manager Larry Collins; Lieutenant Massingill; Doctor K. Fox; and

Nurse L. Holbrook (also known as Nurse Jesse).[2]  Based upon the full record, I

---

[1]  Citations to the record herein use the document numbers and page numbers assigned by the court's electronic filing system.

[2]  The magistrate judge, in the severance Order, summarized each claim that was placed into a separate civil action and directed the Clerk to assign as defendants in that case only the defendants listed in the summary.  At the end of Claim 7 as quoted in part above, Makdessi also stated, "Sgt. Cobb refused [Makdessi] a wheelchair to go back to [his] cell by saying I don't care how much pain & suffering you are in walking."  Compl. 8, ECF No. 1.  In the Order dividing the claims into separate cases, the magistrate judge stated that all claims against Cobb and others would be dismissed by separate Order because they were "mentioned only in the list of defendants and not in the description of any claims."  Severance Order ¶ 6, ECF No. 1-1.  In Case No. 7:22CV00428, I dismissed all claims against Cobb upon finding that Makdessi had not alleged any personal involvement by Cobb in the violation of his constitutional rights.  Order ¶ 6, ECF No. 19.  Makdessi has not moved for reconsideration of the dismissal of the claim against Cobb, nor did he file an appeal in Case No. 7:22CV00428.

construe Makdessi's allegations in this case as asserting the following claims for

relief under § 1983:

1.　On November 3, 2022, at Red Onion, Collins retaliated against Makdessi for filing a lawsuit [Case No. 22CV00428] by ordering that Makdessi be moved from the handicapped accessible cell he had occupied for seven years, in violation of Makdessi's First Amendment rights.

2.　Makdessi complained about Collins' action to Massingill, Blevins, and White; although they knew that Makdessi had serious medical needs to be in a handicapped-accessible cell, they allowed him to be moved (or remain assigned) to a non-handicapped accessible cell, in violation of his Eighth Amendment rights, claiming that Nurse Holbrook and Dr. Fox had ordered that move.

3.　On November 11, 2022, after Makdessi fell in his new cell and suffered a "big painful knot" on his head, swelling to his head and left calf indicating a possible fracture, and his leg turning dark, Nurse Holbrook and Dr. Fox refused to X ray his head and left leg, and blamed security for the cell change, thus showing deliberate indifference to his serious medical needs, in violation of his Eighth Amendment rights.

Through counsel, defendants Massingill, Blevins, and White have filed a

Motion to Dismiss, and defendant Collins has filed an Answer.  Collins has also filed

---

In any event, Cobb's actions as alleged did not violate Makdessi's constitutional rights.  Cobb, as a building sergeant, was entitled to depend on advice from the medical staff who had just examined Makdessi to determine if he had a serious medical need to use a wheelchair to return to his cell. *Miltier ex rel. Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (holding that prison staff without medical expertise may rightfully rely on professional decisions of inmate's treating medical providers regarding appropriate course of treatment), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Therefore, Makdessi's claim against Cobbs is without merit, and accordingly, I decline to reinstate it to this action.

a Motion for Summary Judgment, arguing that Makdessi's retaliation claim should be dismissed for failure to exhaust available administrative remedies. Defendants Dr. Fox and Nurse Holbrook (collectively, Medical Defendants) have filed a Motion for Summary Judgment.

Makdessi has also filed a document that he titles as both a Motion for Summary Judgment and a response to the defendants' motions, which was docketed as ECF No. 37.[3] This pleading he later verified as being signed under penalty of perjury as true and correct, ECF No. 52. This submission expands on Makdessi's factual allegations and attempts to add a retaliation claim against the medical defendants. Because it is verified, I will consider this filing as an affidavit in response to the defendants' motions and in support of Makdessi's motion seeking summary judgment. The same pleading also seeks interlocutory relief directing prison officials to place Makdessi in a handicapped accessible cell again.

I will not allow Makdessi to bring additional legal theories or claims against the defendants through this submission. *Cloaninger, ex rel. Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (noting that plaintiff may not amend a complaint through argument in brief opposing summary judgment). Makdessi has had ample

_____

[3] This same document was docketed twice, as a response to previously filed motions by the defendants and as a summary judgment motion and request for "urgent injunction" for authorities to place Makdessi back in a handicapped accessible cell. Mot. 1, ECF No. 37. For the sake of consistency, I will reference this document when discussing it as Makdessi's response to the defendants' motions or as his summary judgment motion.

opportunity in this case to file an amended complaint, but he has chosen not to do so. Therefore, I will not consider his belated retaliation claim against the medical defendants as properly raised in this case. The defendants have objected to Makdessi's arguments for summary judgment, and he has filed other exhibits and arguments, making the dispositive motions ripe for consideration.

After careful review of all the parties' submissions, I conclude that the Motion to Dismiss must be granted; the Motion for Summary Judgment by Collins must be granted; the medical defendants' summary judgment motion must be granted; and Makdessi's summary judgment motion must be denied. I will also deny Makdessi's request for interlocutory injunctive relief as lacking merit.

## II.    DISCUSSION.

### A.    The Motion to Dismiss Standard.

"A Rule 12(b)(6) motion to dismiss tests only the sufficiency of a complaint." *Mays ex rel. Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).[4] In considering a Rule 12(b)(6) motion, "[t]he district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). A complaint must plead facts

---

[4] I have omitted internal quotation marks, alterations, or citations throughout this Opinion, unless otherwise noted.

sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"[C]ourts are obligated to liberally construe pro se complaints, however inartfully pleaded*." Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017). Liberal construction, however, does not allow me to formulate constitutional claims for Makdessi based on conclusory statements alone. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Principles requiring generous construction of pro se complaints are not . . . without limits," and a reviewing court "cannot be expected to construct full blown claims from sentence fragments.").

B.      The Deliberate Indifference Standard.

A prison official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A deliberate indifference claim consists of two components, objective and subjective." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

First, the plaintiff must prove that, objectively, his medical condition was sufficiently "serious." *Id.* For purposes of a constitutional claim, a condition that qualifies as objectively serious is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Second, the plaintiff must prove that, subjectively, the defendant was deliberately indifferent to the plaintiff's serious medical need. An official is deliberately indifferent only when he or she "knows of and disregards an excessive risk to inmate health or safety." *Jackson*, 775 F.3d at 178. "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.*

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 105–06. Finally, as stated, prison officials may rightfully rely on decisions by medical providers as to proper treatment and accommodations for an inmate's medical needs. *Miltier*, 896 F.2d at 854; *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995). It is not the function of prison administrators to second guess the good faith treatment decisions of licensed physicians. *Id.* A prison administrator "cannot be liable for the medical staff's diagnostic decisions" and, indeed, "cannot

substitute their judgment for a medical professional's prescription." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002).

<div align="center">C. Defendants' Motion to Dismiss.</div>

Defendants Massingill, Blevins, and White have filed a Rule 12(b)(6) motion as to Makdessi's claims against them in the Complaint. They contend that Makdessi fails to show how any of them participated personally in the decision to remove him from his handicapped-equipped cell on November 3, 2022, in causing the injuries he allegedly suffered on November 9, 2022, or in failing to provide appropriate medical care that day. I must agree.

Makdessi alleges that he "complained to" these defendants, they "know [his] serious medical needs to be in a handicapped cell," and they blamed the medical defendants for ordering the move. Compl. 7, ECF No. 1. In the Complaint, however, Makdessi does not state facts showing that Massingill, Blevins, and White had any personal involvement in the decision to remove him from his handicapped-equipped cell. By Makdessi's own account, Massingill moved him after Collins ordered him to do so, and White and Blevins heard Makdessi's complaint about the move only after the fact. He also does not allege that these defendants had any interaction with him on November 9, 2022, after he allegedly fell and injured himself that day in his non-handicapped accessible cell.

In later pleadings, Makdessi alleges that on November 3, 2022, when Massingill came to carry out the order to move Makdessi out of his handicapped-equipped cell, Makdessi showed him medical records, claiming they proved his medical need to remain in the cell. Massingill allegedly reviewed these documents for several minutes and said he would call Collins. He came back shortly, returned the documents to Makdessi, and then ordered him to leave the cell or go to segregation. Massingill allegedly said, "Collins does not care" about any of this paperwork or "your sciatica" that sometimes "makes you fall." Pl. Resp. 4, ECF No. 37. Massingill allegedly said,

> [W]e all know about your medical records & medical needs and your severe back & sciatica injuries and the Federal Judge and the medical order on your cell door that says, "<u>Front Cuff</u>, <u>Bottom Bunk</u> & <u>Bottom tier</u>" status because your sciatica makes you fall in your cell or on the stairs[. I]f you fall in a regular cell its [sic] O.K. [T]his is part of doing time & you should suffer, and we don't care, Collins ordered your removal, or I will lock you up in segregation.

*Id.*

Makdessi asserts that the pod has three handicapped cells, two of which housed inmates who do not have any injury requiring accommodations for physical handicaps. He says he asked Massingill, "[W]hy don't you remove inmate Tyson from cell 611 inste[a]d, who has no injury at all requiring him to stay in his handicap cell." *Id.* Massingill allegedly said that Collins [and] Holbrook wants [sic] you

removed because you are a tro[u]blemaker who files lawsuits and everyone don't [sic] like you & agreed you deserve to suffer." *Id.*

Makdessi claims that Collins and Massingill told him that Dr. Fox and Nurse Holbrook agreed that Makdessi could be transferred to a regular cell on November 3, 2022. *Id.* at 5. He alleges that Blevins and White told him "Collins can do what he wants," regardless of your documentation, "even when it is an order for medical & recommendation for handicap-cell." *Id.* at 6.

As stated, Makdessi has not moved for leave to file an Amended Complaint in this case to bring the additional allegations before the court and allow the defendants to respond to them. In any event, even considering Makdessi's additional allegations in his verified response against Massingill, Blevins, and White, he has not stated facts supporting any § 1983 claim against these defendants. He does not show that any of them played a role in the decision to move him out of the handicapped accessible cell on November 3, 2022. Without showing the defendant's personal involvement, Makdessi cannot state an actionable, civil rights claim against these defendants. Ashcroft v. *Iqbal*, 556 U.S. 662, 676 (2009). Makdessi also has not presented documentation showing that any medical provider had issued a recommendation that, based on Makdessi's physical health conditions leading up to November 2022, he should remain assigned to a handicapped accessible call. No evidence in the record indicates that Massingill, Blevins, and White are medical

professionals qualified to determine whether Makdessi's medical conditions require his assignment to a handicapped accessible cell. On the contrary, as corrections and administrative staff, these defendants were entitled to rely on the prison medical providers who had treated, or were treating, Makdessi to determine if he had a serious medical need that warranted recommendation of the accommodations provided in such a cell. *Miltier*, 896 F.2d at 854.

Accordingly, I conclude that Makdessi has not stated facts to support an Eighth Amendment claim against Massingill, Blevins, or White for failing to prevent or correct his assignment to a non-handicapped accessible call on November 3, 2022. I will grant the Motion to Dismiss as to his claims against these defendants. For the same reasons, after reviewing all the evidence and video, I find no material dispute of fact on which Makdessi could prove any such claim. Therefore, I will deny Makdessi's summary judgment motion against these defendants.

### D.    Motions for Summary Judgment.

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To preclude summary judgment, a nonmovant must present a "genuine" dispute as to a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A pro se litigant's verified complaint or other verified submissions must be considered as affidavits and may defeat a motion for summary judgment "when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021).

Makdessi's claim against defendant Collins asserts that in retaliation for the inmate's pursuit of a lawsuit, on November 3, 2022, Collins moved him out of the handicapped accessible cell he had occupied for years. Collins moves for summary judgment on the ground that Makdessi failed to exhaust available administrative remedies before filing his retaliation claim against Collins.

Under 42 U.S.C. § 1997e(a), a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the prison facility provides to its inmates and meet all deadlines within that procedure. *Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006).

Operating Procedure (OP) 866.1 is the written administrative remedies procedure that Virginia Department of Corrections (VDOC) inmates must follow to comply with § 1997e(a). Mem. Supp. Mot. Summ. J. Vilbrandt Aff. ¶ 5 and

Enclosure A, ECF No. 46-2.  All issues are grievable except disciplinary proceedings and matters outside the control of the VDOC.  "Retaliation is a grievable issue."  *Id.*  Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, which he may do by completing a Written Complaint (also known as an Informal Complaint or IFC) and submitting it to prison staff.  He should receive a written response on the bottom of the form within fifteen days.  If the issue in the IFC is not resolved to the inmate's satisfaction, he may then initiate the formal grievance procedure by filing a Regular Grievance (with the IFC attached).  Only one issue per grievance form is addressed.

When a Regular Grievance is properly filed, the Warden conducts a review of the inmate's submission and issues a Level I response.  If the inmate is dissatisfied with that determination, he can appeal to Level II for review by the Regional Administrator, Health Services Director, or other VDOC administrators, depending on the subject matter.  The inmate can appeal some issues to Level III.  Thus, for full exhaustion, the inmate must submit his claim via an IFC, then a Regular Grievance, and then through all available levels of appeal in OP 866.1.

Red Onion Grievance Coordinator Vilbrandt reviewed records of Makdessi's grievance procedure filings concerning his claims in this case.  The records indicate that he filed several IFC forms related to his removal from the handicapped accessible cell on November 9, 2022:  ROSP-22-INF-02961, dated November 3,

2022, complaining that Massingill removed him from his handicapped accessible cell;[5] ROSP-22-INF-02962, dated November 3, 2022, complaining that Major King authorized his removal from his handicapped accessible cell because King wanted to put another inmate in the cell to assault him; ROSP-22-INF-02963, dated November 3, 2022, complaining that medical staff removed him from the handicap cell despite his medical needs; ROSP-22-INF-03011, dated November 9, 2022, complaining that staff did not care that he fell in his new, non-handicapped accessible cell that day; and ROSP-22-INF-03047, dated November 11, 2022, complaining that medical staff refused to provide him a wheelchair to use returning to his cell after his fall on November 9.  In response to these filings, staff responded that Makdessi's medical file did not include any document stating that he needed a handicapped accessible cell and/or a wheelchair.

On November 21, 2022, Makdessi filed a Regular Grievance, ROSP-22-REG-00403, stating he had proof that he should be in a handicapped accessible cell and

---

[5]  Written Complaint ROSP-22-INF-02961 goes on to state, "Lt. [Massingill] told me to move from handicapped cell or he will lock me up in segregation & the Warden & Major King & Gibson & Collins gave him authorization to displace me from my handicapped cell & we don't give a F**k about any federal judge or contempt of court or your lawsuit or your serious back injuries & pain."  Vilbrandt Aff. Attach., at 34, ECF No. 46-2.  Makdessi also states on this form, "I told the federal judge in Claim #5 that Major King & Collins will retaliate & displace me from handicapped cell in retaliation for filing the lawsuit on 7-29-22."  *Id.*

that various prison staff were in contempt.[6]  To this grievance, he attached ROSP-22-INF-02961, which asserts Collins ordered the move to retaliate against him.  The Regular Grievance itself, however, did not mention retaliation.  Instead, the grievance cites various documents Makdessi claims as proof that he should be placed back into a handicapped accessible cell.  The grievance document does not mention a pending lawsuit or retaliatory motive that allegedly caused Collins' supposed order for Makdessi's cell change.  White provided a Level I response to this grievance, stating that according to medical staff, nothing in Makdessi's medical record indicated a need for a handicapped accessible cell.  Makdessi appealed.  Chief of Operations for Health Services issued a Level II response on January 23, 2023, stating that Makdessi's grievance was unfounded and was a repetitive issue.  Neither the Level I nor the Level II response mentions consideration of any retaliation claim.

Based on this evidence, Collins argues that Makdessi did not exhaust administrative remedies as to his claim that Collins ordered him removed from the handicapped accessible cell on November 3, 2022, to retaliate against him for filing a lawsuit.  I must agree.  Regular Grievance ROSP-22-REG-00403 did not mention retaliation, but instead focused on Makdessi's claims of documentation showing that

---

[6]  In ROSP-22-REG-00403, Makdessi claims to quote a sworn affidavit submitted in a different court case, No. 7:20CV00223, stating that there was no "evidence that Makdessi [was] in JEOPARDY OF BEING DISPLACED FROM HIS CELL."  Vilbrandt Aff. Enclosure G, at 32, ECF No. 46-2.  The case number that Makdessi cites does not refer to a case in which he was involved, according to court records.

he should be reassigned to a handicapped accessible cell.  And the Level I response addressed only that issue.  The Level II response found no grounds to overturn that result.  While Makdessi did exhaust his administrative remedies as to his assertion that he had medical needs for a handicapped accessible cell, I cannot find from the evidence that he presented his related retaliation claim through all levels of the grievance procedure, as required under 42 U.S.C. § 1997e(a).  Vilbrandt Aff. ¶ 37, ECF No. 46-2[7].  As stated, the Regular Grievance does not mention a lawsuit or retaliation, and the Level I nor the Level II responses address only Makdessi's asserted need for handicapped accessible cell accommodations without mentioning any claim of retaliation.

On this record, I conclude that Makdessi did not exhaust available administrative remedies on his current claim that Collins ordered his cell change to retaliate against him for filing a lawsuit.  Nothing in the record indicates that Makdessi could now complete the exhaustion process, given the time limits in the VDOC grievance procedure.  Therefore, I will grant summary judgment on Collins

---

[7]  Specifically, Vilbrandt states,

In summation, "Makdessi ROSP grievance file contains no documentation that he followed his submission of [IFC forms] about being moved to a non-handicap cell in retaliation by submitting a Regular Grievance accepted at intake and appealed through the highest level of appeal. . . . Makdessi, therefore, did not exhaust the administrative remedies available to him."

Vilbrandt Aff. ¶ 37, ECF No. 46-2.

motion under 42 U.S.C. § 1997e(a) and dismiss Makdessi's retaliation claim against Collins with prejudice. Since Makdessi's failure to exhaust administrative remedies bars his ability to pursue his retaliation claim against Collins, I will also deny Makdessi's summary judgment motion as to that claim.

As stated, Makdessi moves for summary judgment against the Medical Defendants, and they have moved for summary judgment against him, regarding his cell move and the medical care he received after his alleged fall on November 9, 2022. In support of their motion, they submit a declaration from Dr. K. Fox, summarizing attached medical records for Makdessi during the relevant time period at Red Onion. Mem. Supp. Mot. Summ. J. Ex. A, Fox Decl., ECF No. 33-1.

Dr. Fox is the VDOC Health Services Director for the Western Region and also serves as the on-site physician for inmates confined at Red Onion. Dr. Fox has reviewed Makdessi's claims — that officials moved Makdessi out of his handicap accessible cell on November 3, 2022; that on November 9, 2022, he fell in his cell, injured his head and possibly fractured his lower leg; and that Nurse Holbrook and Dr. Fox refused to order X rays and blamed prison officials for moving him from the handicap accessible cell. Dr. Fox has also reviewed the business records of the Red Onion medical staff related to these incidents.

At Red Onion, physicians treat an inmate only after a nurse examines him, determines whether a physician's care is warranted, and if so, places him on the

physician sick call list.   On November 9, 2022, a medical provider examined Makdessi for his complaint that after his leg gave way, he had fallen in his cell, caught himself with his left elbow, but still hit the left side of his head.   The provider noted that the inmate did not appear to be in distress, had a small superficial scratch on the left side of his head with no observed bruising or raised area there, and had a small amount of blood on his tissue and shirt with no active bleeding.   Staff placed Makdessi in a medical observation unit to allow his blood pressure medication to take effect and for him to calm down.   Staff checked his vital signs several times and observed that he jumped up from the bunk to walk without difficulty to the cell door when someone arrived at his door.   Nurse Holbrook was notified and gave a verbal order for clonidine, an antihypertensive drug.   Staff checked Makdessi's blood pressure several more times and notified Nurse Holbrook who initialed the entry in the medical notes.

On November 10, 2022, Nurse Holbrook renewed Makdessi's prescriptions for Tylenol and Mobic.   On November 15, 2022, Nurse Holbrook entered a verbal order to increase his dosage of Lisinopril, a blood pressure medication.   Staff instructed him to follow up with Nurse Holbrook and released him to his regular cell.   Later that day, another nurse administered Lisinopril to him at his cell, reporting that he squatted down to the tray slot to talk about his medication increase without grimacing and did not exhibit guarding of his leg or back.   Nurse Holbrook

initialed these entries in the medical notes.  She also ordered twice-weekly blood pressure checks for three weeks.

On November 17, 2022, another nurse examined Makdessi after he complained of a swollen left ankle and concerns about a possible blood clot that he reported as ongoing for a month but getting worse.  He stated that he had fallen on November 9, 2022, and hit his head.  He also asserted that he had left leg pain, sciatica nerve pain, and burning in his left thigh.  He reported that his back had sometimes gone numb while he was in bed, that his legs sometimes gave out and that he had had falls and pain while standing for long periods.  Makdessi admitted that he had not been wearing his anti-embolism stocking.  The provider noted a bruise to Makdessi's left thigh about five inches in diameter, but the inmate claimed he did not remember an injury there.  His gait was unsteady, as he limped on his left leg and occasionally shuffled.  He asked the provider to order him a wheelchair and further testing to determine what was wrong.

The provider recorded that Makdessi's circulation was good, that his left leg range of motion was intact, but that he winced with pain.  Notes indicate that Makdessi verbally rated the pain as 8/10 and said that it was worse with weight-bearing.  The provider also noted that Makdessi's left calf was swollen more than the right one.  Staff instructed the inmate to return if his condition worsened and told him how to follow up.  Because Makdessi already had prescriptions for Tylenol and

Mobic, the provider did not prescribe additional medications and referred him to see the onsite provider.  Nurse Holbrook reviewed this entry.

On November 21, 2022, Nurse Holbrook saw Makdessi after he filed multiple complaints because officers had removed him from his handicap accessible cell on November 3, 2022.  He explained that he had previously used the handicap bars to decompress his spine several times a day for seven years, and without the bars, he claimed he had fallen several times, causing unbearable pain.  Makdessi also asserted that he had developed an embolism in his leg, causing it to turn black and making him unstable when walking long distances.  Nurse Holbrook noted that Makdessi's gait was steady, and he could walk slowly and sit on the exam table without assistance or grimacing.  Makdessi pointed to a small area on his left mid-thigh that blanched easily with less than three-second refill; he stated that no similar mark was present on his right thigh, but Nurse Holbrook observed a similar, smaller area on that thigh.  The nurse also noted spider veins on both thighs with dry skin, that Makdessi was neurovascularly intact, that his knees and feet had normal range of motion, and that she saw no evidence of an embolism.  Nurse Holbrook recorded that his left leg was slightly swollen, a chronic condition for Makdessi for which he had been given a stocking that he was not wearing.  The nurse noted that Makdessi received the stocking on April 22, 2022, for swelling of his ankles at the end of the

Case 7:23-cv-00050-JPJ-PMS   Document 69   Filed 09/30/24   Page 21 of 34   Pageid#: 374


day, but that on August 22, 2022, he had also exhibited chronic slight swelling of his left leg.

Nurse Holbrook reported that Makdessi was argumentative during the exam on November 21, 2022, and complained about a gang member being assigned to a handicap accessible cell. Nurse Holbrook explained that using the handicap bars for spinal decompression was not an appropriate reason for Makdessi to be assigned a cell equipped with such bars and was not a prescribed treatment for his low back pain. The nurse also educated him about other ways to stretch his spine, such as touching his toes or using yoga positions. Nurse Holbrook noted that when she offered to order physical therapy, Makdessi replied that he had done that and could just do it better himself. The nurse also offered to keep him in medical to rest his back, but he refused, saying that it was no different than being in his pod. He claimed that nothing worked for his pain except decompressing, using the handicap bars. Nurse Holbrook advised Makdessi that losing weight would help his low back pain, as Dr. Fox had previously recommended. The nurse reminded Makdessi that he had refused a surgical option that medical professionals had offered. Finally, Nurse Holbrook ordered for Makdessi Voltaren gel and a follow up visit with Dr. Fox — the inmate's first visit with Dr. Fox since his alleged fall on November 9, 2022.

Dr. Fox saw Makdessi on December 2, 2022, for his complaints about being removed from his handicapped accessible cell. The doctor states that security staff

moved Makdessi out of that cell because another inmate needed it.  Dr. Fox noted Makdessi's claim that he had already filed a lawsuit to get his handicapped accessible cell back.  The doctor recorded that a nurse had advised Makdessi on November 21, 2022, that hanging from the handicap bars to decompress his back was not an indication for needing assignment to a handicapped accessible cell.  The doctor also noted that medical providers had previously offered physical therapy and a particular back surgery for Makdessi's lower back pain, but he had refused these offers.  Dr. Fox also recorded finding that on October 9, 2022, after Makdessi told neurosurgery that he preferred to "hang from the bar" in a handicapped accessible cell, Dr. Fox had indicated he had no objection to Makdessi remaining in that type of cell at that time but had explained that "hanging from the bar" was not a medical indication for assignment to a handicapped accessible cell.  Fox Decl. ¶ 13, ECF No. 33-1.

During the December 2, 2022, exam, Dr. Fox noted that Makdessi did not appear in distress, had no contusions, abrasions, lacerations, or bruising on his skull, and his back and neck were supple, despite his claims of chronic lumbar pain. Makdessi asserted that he had chronic shoulder and leg pain as well, but no acute changes.  The doctor noted that the inmate's sensation to his legs was intact, he had normal strength, and his gait was stable, with no bruising, discoloration, or signs of trauma from falls.  Makdessi was argumentative, admitting that he used the handicap

-22-

bars for his back pain and not for ambulation.  Dr. Fox assessed him with chronic back pain, but he declined surgery and physical therapy at that time.  The doctor ordered a refill of Cymbalta.

On January 19, 2023, Nurse Holbrook entered orders for Makdessi to receive a physical therapy evaluation for low back pain.  On February 24, 2023, Makdessi underwent X rays of his left tibia and fibula because of his continued complaints of leg pain.  Results were unremarkable and indicated no evidence of an acute fracture. The results did show a healed fracture of the fibula that was also present on X rays performed in July 2008.

Dr. Fox states that neither he nor Nurse Holbrook had any control over Makdessi's housing assignment.  He explains that while medical staff can make recommendations about an inmate's housing, security staff ultimately determine where an inmate will be housed at any given time.  Dr. Fox states that he did not recommend at any time that Makdessi should be removed from his handicapped accessible cell, and that medical records do not indicate any such recommendation by Nurse Holbrook.  The doctor explains that "a handicapped accessible cell is only indicated for inmates who have difficulty ambulating."  *Id.* at ¶ 20.  Dr. Fox asserts that based on his observations and his review of medical records, Makdessi did not have difficulty ambulating in the fall of 2022 and told providers that he wanted the handicap bars in his cell to decompress his spine.  That purpose is neither a

prescribed treatment for his low back pain nor an indication for a handicapped accessible cell.

Makdessi states that on November 3, 2022, when Massingill ordered him to move out of the handicapped accessible cell, he showed the officer various medical records to support his claim that he needed the accommodations of the cell where he had been several years.  He has claimed that surveillance video footage will verify this encounter, showing that Massingill reviewed the paperwork Makdessi presented to him for several minutes.  Makdessi describes this paperwork as follows: (1) a medical order "always on [his] cell door that says, 'Front Cuff, Bottom bunk, Bottom tier X 365 days.'"  Resp. Opp'n 4, ECF No. 37; *Id.* at Ex. 3, ECF No. 37-1; (2) a prison officer's declaration, responding to a motion in a different lawsuit, stating "there is no evidence to prove Makdessi is in jeopardy of being 'displaced' from his cell."[8]  *Id.* at 4; *Id.* at Ex. 1; (3) medical records regarding an MRI and a neurosurgeon's report from 2019 showing Makdessi has severe degenerative disc disease and "severe sciatica with pain going down to both legs & feet," *Id.* at Ex. 2,

---

[8] Makdessi claims that this statement appeared in a document in No. 7:20CV00223, but as stated, the court's docket does not reflect that Makdessi had any lawsuit in this court with that case number.  Nevertheless, he purports to quote the full statement from an unknown date, offered in opposition to a motion seeking interlocutory relief: "Makdessi is already in handicapped cell.  Furthermore, Warden Kiser, Unit Manager Collins and Sgt. Ridings deny that they ever threatened to remove Makdessi from his handicapped cell nor is there any evidence to prove Makdessi is in jeopardy of being 'displaced' from his cell.'"  *Id.* Ex. 1, at 2, ECF No. 37-1.

4, 5;[9] and (4) a response from D. Ball NP to Makdessi's offender request form in late 2019, stating "No requests has [sic] been sent to me concerning changing your cell location by any staff at the present," *Id.* at Ex. 1, at 5, ECF No. 37-1.

Makdessi states that after he fell in the non-handicapped accessible cell on November 9, 2022, and hit his head, "[t]here was so much blood on the t-shirt [he] changed and in [his] cell full of blood, and they refused to take photos in order to say 'only a small amount of blood.'" *Id.* at 6.  Makdessi claims that while in medical observation that day, he was "walking with difficulty to [his] cell door," squatted at the door to get medication by holding onto the door and the chair, and still was in pain. *Id.*  He claims that when he left the medical unit, he "was limping in pain [and] walking very slow," with "an officer on each side to hold [him] if [he] fell." *Id.*

Makdessi's response also adds facts about incidents that occurred days or months after the events relevant to the claims in this case.  At a sick call visit on November 21, 2022, Nurse Holbrook blamed Makdessi for being argumentative by suggesting that inmate Tyson did not have any medical need for a handicapped-

---

[9] The neurosurgery report, dated March 20, 2019, detailed Makdessi's complaints of low back and left lower extremity pain, numbness in the soles of his feet, pain in the left foot, and being "[l]imited in ambulation." *Id.* at Ex. 5, at 10, ECF No. 37-1.  The report also notes that Makdessi was then housed in a handicapped accessible cell and used the grab bars to "decompress" his back to relieve his symptoms. *Id.*  He asked the surgeon for a back brace and special shoes.  The report indicates that when the surgeon discussed possible surgery to perform a lumbar decompressive laminectomy, Makdessi said he was not "interested in surgical intervention." *Id.* at 12.  Instead, he asked about "titanium disc replacement" surgery, but the surgeon stated, "I do not believe he would be a disc replacement candidate." *Id.*

equipped cell, although he was assigned one. Nurse Holbrook allegedly told Makdessi that he "should not have filed a lawsuit that made Collins angry, that Collins is in charge of housing assignments, that she has no control over [his] handicap-cell status." *Id.* at 7.

Makdessi states that after removal from the handicapped accessible cell, he "fell many times after [his] left leg gave out on [him] and [he] had no handicap bars to hold onto." *Id.* He repeatedly describes his difficulty and pain while walking, even while being housed in the handicapped accessible cell. He allegedly told medical staff many times over seven years prior to the cell change about his "left leg pain, sciatic nerve pain [and] burning in the left thigh." *Id.* Makdessi claims that for months before the move, he "was unsteady and limped on [his] left leg and shuffled when he went to medical and back." *Id.* He told medical staff that his pain "was 8/10 and got worse walking after he fell even while on medication." *Id.* He asserts that months after the cell change, on February 10, 2023, Collins came to his regular cell and said, "drop the lawsuits" and he "will place [Makdessi] back in [his] medically needed handicap cell." *Id.* at 6.

Makdessi denies that he ever refused to go to physical therapy (PT) when called for it. *Id.* at 7. Medical records in this case show that he received PT in early 2023 at least four times. Fox Decl. Attach. A-A, ECF No. 33-1. Finally, Makdessi asserts that if medical providers can only make recommendations about who needs

-26-

a handicapped accessible cell and security staff assigns cell status, as Dr. Fox states, then other prison officials lied about the justification for his removal from the handicapped accessible cell.  Resp. Opp'n 8, ECF No. 37.

Makdessi has alleged facts showing that he suffers from some medical conditions that cause him pain and discomfort.  The medical conditions relevant to his claims against Dr. Fox and Nurse Holbrook in this case, however, relate only to the injuries they observed and treated or allegedly failed to treat, following Makdessi's alleged fall in his cell on November 9, 2022, and to some extent, their response to his cell reassignment.  These defendants did not assess Makdessi's injuries from the fall until ten days or three weeks after it happened.

On November 9, 2022, the day Makdessi complained to medical about a fall, a different provider assessed Makdessi's reported injuries and noted only a small scratch and no bumps or bruises on his head and some blood on his shirt with no active bleeding.  Staff held Makdessi in the medical unit for observation, adjusted his blood pressure medication, and took vital signs.  Although Makdessi also complained that his left calf might be broken, medical notes from that day indicated that he got up from his bunk and walked to the door without difficulty.  When Makdessi continued to complain about leg pain and underwent X rays of his calf months later, the image results revealed only an old, healed fracture that was sustained and evaluated years before November 9, 2022.  Thus, the conditions of

which Makdessi complained after his alleged fall simply did not rise to the level of a serious medical need for different treatment than staff provided that day and in the days that followed.

Nurse Holbrook reviewed medical notes from these exams, renewed Makdessi's pain medications, increased his blood pressure medication, and ordered regular blood pressure checks. Nurse Holbrook also reviewed notes from the nurse who examined Makdessi on November 17, 2022, for complaints of ankle swelling, a possible blood clot, numbness, and his legs giving out and causing past falls. This nurse reported Makdessi limped on his left leg and shuffled, asking for a wheelchair. But on physical examination, the nurse found that circulation and range of motion were good, despite claims of pain. The nurse also found his left calf more swollen than the other. No new medications were added.

Nurse Holbrook's own assessment of Makdessi after his fall occurred on November 21, 2022. She reported his complaints that being without handicap bars had caused him several falls, pain, and an embolism in his leg that hindered him when walking. But Nurse Holbrook's observations and physical exam indicated a steady gait, no evidence of an embolism, and normal range of motion. She noted that the left leg was slightly swollen and that months before, in April 2022, medical staff had provided Makdessi with hose to alleviate leg swelling, but he was not wearing them.

Nurse Holbrook also listened to Makdessi's complaints that he needed a handicapped accessible cell so he could decompress his back, using the bars. She told him that this so-called spinal decompression method was not a prescribed treatment for his condition. She tried to educate him about other ways to alleviate his back pain — exercises, yoga, PT, staying in medical to rest. He refused at that time, and the nurse referred him to Dr. Fox.

These records show that even before Nurse Holbrook examined Makdessi, she was attentive to his medical needs from the fall. She reviewed nurses' notes about his condition, changed his medications, and ordered monitoring of his blood pressure. After examining Makdessi ten days after his fall, Nurse Holbrook offered him ways to address his back pain besides medication and using handicap bars. During that exam, Nurse Holbrook did not note any head injury or signs of a leg fracture requiring attention and indicated that he already had hose he could use to prevent or alleviate leg swelling. Eventually, months later, he tried physical therapy as she recommended.

Similarly, the record indicates that Dr. Fox attended to Makdessi's complaints during his examination of the inmate on December 2, 2022, weeks after the alleged fall. The doctor did not note any injuries to Makdessi's head, any problem with his strength or gait, or any signs of trauma from a fall. He reviewed medical notes from Nurse Holbrook and previous providers, including offers of other treatments of

which Makdessi had not availed himself, such as physical therapy, particular surgical options, and wearing anti-embolism hose.  Based on Dr. Fox's physical exam, he assessed Makdessi with chronic back pain and refilled his medication.

From the facts in the record, I cannot find that Makdessi presented at any time with a serious medical need for different or more prompt medical treatment than he received after his alleged fall on November 9, 2022.  Later testing proved he had no fracture, he had already received hose for his chronically swollen leg (although he declined to use them), and by the time he saw either Nurse Holbrook or Dr. Fox, he exhibited no sign of a head wound or acute leg injury that needed immediate or different treatment than was already being provided to him.  Moreover, each of them reviewed his related medical records, assessed his current condition, and provided advice and care.  Thus, no evidence supports a finding of deliberate indifference by either of these defendants.

Makdessi's primary impetus for this lawsuit is his removal from a handicapped accessible cell that he had occupied for several years.  He argues that the defendants are playing a game:  the security defendants moved him out of that cell, blaming the medical defendants for saying that it was not required for Makdessi's medical conditions, while the medical defendants assert that they can only make recommendations about an inmate's housing needs, because security staff determine where an inmate should be confined at any given time.  Throughout his

submissions, Makdessi alleges various physical limitations and pain from which he suffers and that he depended on the grab bars in his handicapped accessible cell for years to assist him in dealing with his limitations.[10]  Makdessi claims that over the last several years, various officials have indicated that he would continue to be assigned to a handicapped accessible cell, and he asks the court to order his immediate transfer to such a cell.  The documents he presents in support of this assertion, however, do not support his claim that anyone has ordered his long-term assignment to such a cell.

Moreover, the defendants' evidence indicates that inmates' housing assignments are never permanent.  Collins states that inmates at Red Onion may be moved from one cell to another whenever necessary and appropriate — for disciplinary reasons, "keep separate" orders, medical reasons, or other considerations.  "No inmate is guaranteed to be housed in a particular cell at ROSP."  Mem. Supp. Mot. Sum. J., Collins Aff. ¶ 7, ECF No. 46-1.  Dr. Fox states that medical staff, including himself and Nurse Holbrook, do not control inmates' cell

---

[10]  Makdessi also claims that at least one other inmate housed in a Red Onion handicapped accessible cell has no physical or medical need for the accommodations of such a cell.  I cannot find this conclusory statement is sufficient to create a material dispute of fact for summary judgment purposes, however.  It is nothing more than Makdessi's opinion stated in his verified pleading, but without any factual basis to believe that he has personal knowledge of this other inmate's physical maladies or ambulation difficulties.  Therefore, these speculative accusations need not be accepted as true in my determination of whether Makdessi has stated a claim against any defendant upon which relief can be granted.

assignment decisions.  Medical staff can make cell assignment recommendations, but "[s]ecurity staff make the ultimate decision on where an inmate is housed."  Fox Decl. ¶ 20, ECF No. 33-1.

A handicapped accessible cell is reserved for inmates with ambulation difficulties.  Dr. Fox states that medical records in the fall of 2022 do not indicate Makdessi had serious ambulation difficulties.  In my review of the evidence, I have found no recommendation in his medical records before the court in this case that Makdessi needs a handicapped accessible cell.  Makdessi himself asserts that his medical conditions warrant assignment to such a cell.  His personal assessments of his medical needs, however, are nothing more than disagreement with his treating medical professionals.  Such disagreements do not support a finding of deliberate indifference as required to prevail in an Eighth Amendment claim regarding medical care.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).  Accordingly, I will grant summary judgment for Dr. Fox and Nurse Holbrook and deny Makdessi's summary judgment motion as to his claims against them.

### III.   INTERLOCUTORY RELIEF.

Finally, I must also deny Makdessi's motion for interlocutory injunctive relief seeking a court order directing officials to place him in a handicapped accessible cell.  "A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit."  *Di Biase*

*v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).  A party seeking a preliminary injunction must state facts clearly showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Each of these four factors must be satisfied.  *Id.*

For reasons already discussed, Makdessi has not presented evidence showing a likelihood of success on the merits of his claims.  While he believes he benefitted from being housed in a handicapped accessible cell for several years, the evidence in the record does not indicate that any medical professional has recently determined that such accommodations are recommended for his current medical conditions.  Accordingly, Makdessi has not shown that he will suffer irreparable harm in the absence of the court order he requests.  Therefore, I will deny his motion for interlocutory injunctive relief.

## IV.  CONCLUSION.

For the reasons stated, it is hereby **ORDERED** that the Motion to Dismiss by defendants Blevins, Massingill, and White, ECF No. 17, is GRANTED; the Motion for Summary Judgment by defendant Collins, ECF No. 45, is GRANTED; the Motion for Summary Judgment by defendants Dr. Fox and Nurse Holbrook,

ECF No. 32, is GRANTED; and the plaintiff's Motion for Summary Judgment and seeking injunctive relief, ECF No. 38, is DENIED.

Judgment in favor of the defendants will be entered herewith.

ENTER:   September 30, 2024

/s/  JAMES P. JONES
Senior United States District Judge